FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 14 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

MICHAEL J. PERSICO and
THEODORE N. PERSICO, JR.,

                        Defendants.
-------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CR-147 (SLT)

**TOWNES, United States District Judge:**

By superceding indictment filed November 4, 2010, the government charged defendants Michael J. Persico and Theodore N. Persico, Jr. (collectively, "the Persicos"), with, among other things, two counts of conspiring to violate 18 U.S.C. § 1962(c), a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Count One of the superceding indictment in this case alleges a conspiracy to conduct and participate in the conduct of a criminal enterprise's affairs "through a pattern of racketeering activity." Count Six alleges a conspiracy to conduct and participate in the conduct of the enterprise's affairs "through collection of unlawful debt."

As used in § 1962(c), the term "unlawful debt" encompasses both debt incurred from illegal gambling activity and debt arising from certain loansharking activity. Specifically, 18 U.S.C. § 1961(6) defines the term "unlawful debt" to mean:

> [A] debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in

> connection with the business of gambling in violation of the law of
> the United States, a State or political subdivision thereof, or the
> business of lending money or a thing of value at a rate usurious
> under State or Federal law, where the usurious rate is at least twice
> the enforceable rate.

Count Six specifies that it deals with the latter form of unlawful debt: "to wit: a debt that was unenforceable under New York State law, to wit: New York Penal Law Section 190.40, in whole and in part as to principal and interest because of the law relating to usury, and was incurred in connection with the business of lending money and one or more things of value at a rate usurious under New York State law, where the usurious rate was at least twice the enforceable rate."

In a pre-trial motion filed on April 1, 2011, Michael J. Persico seeks, *inter alia*, to dismiss Count Six on two grounds. First, he argues that the portion of RICO which makes it illegal to conduct the affairs of an enterprise through "collection of unlawful debt" is unconstitutionally vague. Notice of Motion, ¶ III. Second, he argues that Count Six of the indictment as pled is impermissibly vague. *Id.* at ¶IV.

At oral argument on May 27, 2011, this Court adjudicated all of the issues raised in Michael Persico's pre-trial motion, except for these two issues related to Count Six. Shortly after oral argument, Theodore N. Persico, Jr., joined in Michael J. Persico's motion. *See* Letter to Hon. Sandra L. Townes from Joseph Corozzo, Esq., dated May 27, 2011. For the reasons set forth below, this Court now denies the Persicos' motions to dismiss Count Six of the superceding indictment.

## *The Statute is not Vague*

The first of the Persicos' arguments regarding Count Six alleges that a portion of the RICO statute itself is unconstitutionally vague. Specifically, the Persicos argue that the phrase "business of lending money," which appears in subsection (B) of § 1961(6), is unconstitutionally

vague because it fails to "provide a person of ordinary intelligence fair notice of what is prohibited." Memorandum of Law in Support of the Defendant Michael Persico's Pretrial Motions ("Def. Memo") at 16 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). According to the Persicos, because there is no "federal or state law definition of a money lending business," it is "impossible for ordinary people to conform their behavior to the law, rendering the phrase 'business of lending money' intolerably vague." *Id*. at 17.

While § 1961(6) indisputably contains the phrase, "the business of lending money," the Persicos' analysis focuses only on that phrase and disregards of the remainder of the statute. When one considers the plain language of the statute as a whole, this focus appears misplaced. The first part of § 1961(6) requires that "unlawful debt" either (1) be incurred or contracted in some form of illegal gambling activity or (2) be unenforceable by virtue of state or federal usury laws. The second part – subsection (B) – further narrows the definition, requiring, *inter alia*, that the "unlawful debt" be incurred in connection with an illegal "business." In the case of gambling, the debt must be "incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof." In the case of loansharking, the debt must be "incurred in connection with the business of lending money or a thing of value at a rate usurious under State or Federal law."

In light of the structure of the statute, it seems clear that the phrase, "business of lending money," was not meant to be read in isolation, as a term of art. Indeed, this is likely the reason the Persicos have been unable to find any case law interpreting the phrase. Rather, the phrase combines two distinct elements, which must be analyzed separately. First, the government must establish that each defendant was "lending money or a thing of value at a rate usurious under

3

State or Federal law." Second, the government must establish that each defendant was in "the business of" doing so.

Although this Court does not perceive any ambiguity in the statutory language which would necessitate reference to the legislative history, the Court nonetheless notes that the legislative history of RICO, as interpreted by the Second Circuit in *Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239 (2d Cir. 1985), supports this interpretation. In *Durante Bros.*, the Second Circuit observed:

> [O]ne of the impetuses for the enactment of RICO was the finding that organized crime, through the funds gained from such activities as loan sharking, was infiltrating legitimate businesses. The inclusion of "collection of unlawful debt" as a major predicate for RICO liability seems to have been an explicit recognition of the evils of loan sharking, and there is no indication that Congress was taking aim at legitimate banking institutions. Rather, the legislative history indicates that the purpose of requiring, in the definition of "unlawful debt," that the usurious rate be at least twice the enforceable rate was "to limit the effect of this definition to cases of clear 'loan-sharking,'" S.Rep. No. 91-617, 91st Cong., 1st Sess. 158 (1969), and to "eliminate[ ] the possibility of 'inadvertent' usury," *id.* at 159. The requirement that the loan have been incurred in connection with "the business of" making usurious loans seems aimed at the same goal, *i.e.*, the exclusion from the scope of the statute of occasional usurious transactions by one not in the business of loan sharking. As the legislative history indicates in discussing the concept of "pattern" of racketeering activity, "[t]he target of [RICO] is . . . not sporadic activity." *Id.* at 158. *Cf. United States v. Salinas*, 564 F.2d 688, 691 (5th Cir.1977) (inferring that the reason Congress included "the business of" gambling in § 1961(6) "was that it sought to punish only large scale gambling operations involving 'organized crime' as contrasted with small time gambling."), *cert. denied,* 435 U.S. 951 (1978).

*Id.* at 250. Thus, *Durante Bros.* suggests that the second half of subsection (B) was meant to be read as three phrases, which are demarcated by parentheses as follows:

4

> (the business of) (lending money or a thing of value at a rate
> usurious under State or Federal law,) (where the usurious rate is at
> least twice the enforceable rate.)

If one reads the statutory language in this manner, starting with the second parenthetical, the language of the statute is not at all vague. The second parenthetical clearly requires a violation of state or federal usury laws.[1] The third parenthetical requires that the usurious rate being charged by the defendant has to be "at least twice the enforceable rate."[2]

The first phrase, "the business of," appears in several other federal statutes. Even where not defined, it has been repeatedly held not to be unconstitutionally vague. For example, 18 U.S.C. § 922(a)(1) provides, in pertinent part, that "[i]t shall be unlawful . . . to engage in the business of importing, manufacturing, or dealing in firearms. . . ." This statute has been upheld against vagueness challenges on several occasions. According to *United States v. Durrani*, 659 F.Supp. 1177, 1181 (D.Conn. 1987):

> While rejecting challenges to section 922(a)(1) for vagueness,
> courts have typically interpreted "business" as "that which
> occupies time, attention and labor for the purpose of livelihood or
> profit." *United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir.
> 1971); *accord United States v. Williams*, 502 F.2d 581, 583 (8th
> Cir. 1974); *United States v. Kowalski,* 502 F.2d 203, 205 (7th Cir.
> 1974), *cert. denied,* 420 U.S. 979 . . . (1975). Although not ruling
> with regard to vagueness claims, other courts have interpreted the
> words "to engage in the business of" as used in section 922(a)(1) to
> mean "more than one isolated sale or transaction." *United States v.*

---

[1] In this case, the language of Count Six specifies New York Penal Law § 190.40 – Criminal Usury in the Second Degree – which makes it a Class E felony to "knowingly charge[], take[] or receive[] any money or other property as interest on the loan or forbearance of any money or other property at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period."

[2] Since New York Penal Law § 190.40 sets the enforceable rate at "twenty-five per centum per annum," the government in this case would need to establish rates in excess of 50% per annum.

*Tarr*, 589 F.2d 55, 59 (1st Cir. 1978); *see also United States v. Huffman*, 518 F.2d 80, 81 (4th Cir.), *cert. denied,* 423 U.S. 864 (1975).

In this connection, it is worth noting that the New York Court of Appeals has addressed a similar issue in rejecting a challenge to Penal Law § 190.42 – Criminal Usury in the First Degree. To make out Criminal Usury in the First Degree, the prosecution must prove a violation of § 190.40, and an exacerbating factor – either (1) a prior conviction for committing or attempting a violation of § 190.40 or (2) that the actor's conduct "was part of a scheme or business of making or collecting usurious loans."

In *People v. Lombardo*, 61 N.Y.2d 97 (1984), the New York Court of Appeals specifically rejected "the argument that use of the words 'scheme or business of making or collecting usurious loans' renders the statute void for vagueness, thus denying defendant his constitutional right to due process." *Id.* at 104. The Court of Appeals held:

> The terms "scheme or business" are not impermissibly vague. Substantive meaning can readily be imported from the dictionary meaning of the terms in common usage. "Scheme" may be defined to mean, "a design or plan formed to accomplish some purpose" and "business" may be defined to mean, "commercial activity engaged in for gain" (Black's Law Dictionary [5th ed.], pp. 1206, 179). (*Cf. United States v. Batson*, 706 F.2d 657, 680 ["scheme" not unconstitutionally vague as used in 7 CFR 722.817(b)(1) ]; *United States v. Kreimer*, 609 F.2d 126, 128 [defining "scheme" under US Code, tit. 18, § 1341]; *United States v. Van Buren*, 593 F.2d 125, 126 ["business" as used in U.S. Code, tit. 18, § 922, subd. (a), par. (1) not void for vagueness].) In the context of this statute it is clear that what is denoted is a series of transactions, multiple as to loans if not borrowers, which are usurious and are made by the same person under such circumstances that they can factually be found to be interrelated and to constitute parts of an integrated single operation. What evidence will suffice to meet this definition will necessarily depend on the circumstances of each case.

*Id.* at 104-05.

Although neither *Lombardo* nor any of the federal circuit opinions cited in *Durrani* are controlling, this Court finds the reasoning of these cases persuasive. While the term, "in the business of," may not have a precise definition, it is widely used. Indeed, lay persons are more likely to be unfamiliar with the precise definition of usury than to be uncertain as to what it means to be "in the business of" making such loans. Accordingly, this Court cannot find that the phrase, "in the business of," is so vague as to deprive of "a person of ordinary intelligence [of] fair notice of what is prohibited." *See United States v. Williams*, 553 U.S. 285, 304 (2008).

***Counts Six is Not Vague***

The second of the Persicos' two arguments relating to Count Six relates to the question of whether the count is impermissibly vague as pled. The Persicos concede that an indictment need do "little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Def. Memo at 22 (citing cases) (emphasis omitted). However, the Persicos assert that this statute does *nothing* more than track the language of the statute. The Persicos further argues that, even if Count Six is not vague, they should be entitled to a bill of particulars.

Count Six does far more than merely track the language of the RICO statute. The superceding indictment describes the alleged criminal enterprise – the Colombo crime family (Superceding Indictment ¶¶ 1-7); alleges that this enterprise is engaged in "various criminal activities," including "loansharking" (*id*. at ¶ 8); and specifies the Persicos' alleged positions within the enterprise (*id*. at ¶¶ 12, 14). Count Six states that the Persicos conspired between May 2009 and February 2010 to conduct or participate in the conduct of the enterprise's affairs through "collection of unlawful debt," and cites to New York Penal Law § 190.40. The reference

7

to § 190.40 makes clear that the "unlawful debt" is alleged to be the result of loansharking activity, namely lending money at a rate in excess of 50% per annum.

Moreover, even if Count Six were vague, the government has fleshed out its theory in the papers filed in response to Michael J. Persico's motion. The government represents:

> The government's proof at trial will show that [Michael] Persico, together with others, conspired to collect a debt incurred by James C. Bombino and Steven Marcus, principals of All Around Trucking, in the principal amount of $100,000, carrying an interest rate of sixty percent per year. The evidence will also show that [Michael] Persico was in the business of lending money, in that he more than occasionally lent money in the expectation of repayment at a profit, at least in some cases to individuals who understood that they would suffer physical harm if the loans were not repaid in a manner satisfactory to [him].

Government's Opposition to the Defendant's Pretrial Motions at 35.[3] These disclosures in the government's responsive papers would suffice to clarify what actions are alleged to violate the law. Accordingly, this Court finds that Count Six is not impermissibly vague as pled and is sufficient both to put the Persicos on notice as to what the government is charging them with and to protect them against double jeopardy. Moreover, in light of the disclosures contained in the government's responsive papers, this Court sees no need to grant the Persico's request for a bill of particulars.

---

[3]Because Theodore Persico, Jr., only joined in Michael J. Persico's motion after oral argument, the government did not specifically respond to Theodore N. Persico, Jr.'s motion or make any representation about the case against him. This Court assumes, however, that these representations also apply to Theodore N. Persico, Jr.

## *CONCLUSION*

For the reasons set forth above, that portion of the pre-trial motion of Michael J. Persico in which he argues that both 18 U.S.C. § 1961(6) and Count Six of the superceding indictment are unconstitutionally vague is denied. That portion of the pre-trial motion of Theodore N. Persico, Jr., which joins in this portion of Michael Persico's motion, is also denied.

**SO ORDERED:**

s/Sandra L. Townes

/ SANDRA L. TOWNES
United States District Judge

Dated: June 9, 2011
Brooklyn, New York

9