# THE LAW OFFICE OF ELIZABETH E. MACEDONIO

──────────────────────── ATTORNEY AT LAW ────────────────────────

42-40 BELL BOULEVARD
SUITE 302
BAYSIDE, NEW YORK 11361

TELEPHONE: (718) 279-3770
FAX: (718) 281-0850
Email: emacedonio@yahoo.com

March 6, 2012

Via ECF

Honorable Sandra L. Townes
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

                  Re: United States v. Theodore Persico
                           10 Cr. 147 (SLT)

Dear Judge Townes:

    With the consent of the Government, I write to request that the Court accept the annexed motion in opposition to an anonymous and partially sequestered jury one day out of time.

    The parties agree that with the Court's approval, the Government will have one additional day to file its reply papers.

    I thank Your Honor for her consideration in this matter.

                                                   Respectfully,

                                                   /S/

                                                 Elizabeth E. Macedonio
                                                 James C. Neville
                                                 Counsel for the Defendant
                                                 *Theodore N. Persico, Jr.*

cc: All Parties – Via ECF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES of AMERICA,

        v.                                      10 Cr. 147 (S-4) (SLT)

THEODORE N. PERSICO, Jr.

        Defendant.

------------------------------------------------------------X


**DEFENDANT THEODORE N. PERSICO, JR'S
MEMORANDUM OF LAW IN OPPOSITION TO
THE GOVERNMENT'S MOTION FOR AN ANONYMOUS
AND PARTIALLY SEQUESTERED JURY**


ELIZABETH E. MACEDONIO, ESQ.      JAMES C. NEVILLE, ESQ.
42-40 Bell Blvd., Suite 302              P.O. Box 1711
Bayside, NY 11361                       14 Vanderventer Ave
(718) 279-3770                            Port Washington, NY 11050
                                                        (516) 883-5905

*Attorneys for Theodore N. Persico, Jr.*

## Preliminary Statement

The Court has scheduled jury-selection to begin in this case on June 4, 2012.

On February 12, 2012, the Government filed a motion asking the Court to empanel an anonymous jury and to impose certain security procedures regarding the jurors travel to and from the courthouse and restrictions on the jury's freedom while at the courthouse. This memorandum is filed on behalf of Theodore N. Persico, Jr. ("Persico") in opposition to the Government's motion.

As set forth below, empanelling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect the privacy of the members of the jury. An anonymous jury – especially one that would be permitted to function only when under guard by the United States Marshal's Service – would poison the atmosphere of the case and serve to bolster the Government's proof by creating the impression that the defendants on trial are guilty and dangerous. Particularly in a case in which the Government has charged the defendants with acts of violence, juror anonymity sends the message to each juror that he or she needs to be protected from the defendants on trial. From there, members of the jury could rationally infer

that the defendants are both dangerous and guilty. Accordingly, granting the Government's application would deny the defendants the fair trial guaranteed by the United States Constitution.

## Legal Argument

### AN ANONYMOUS JURY IS NEITHER NECESSARY NOR APPROPRIATE FOR PERSICO'S TRIAL

**A.  An anonymous jury may not be empanelled in the absence of "strong reason to believe the jury needs protection," since empanelling an anonymous jury burdens the presumption of innocence and impairs a defendant's ability to conduct meaningful <u>voir dire</u>.**

The empanelling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." <u>United States v. Vario</u>, 943 F.2d 236, 239 (2d Cir. 1991); <u>United States v. Thai</u>, 29 F.3d 785, 801 (2d Cir. 1994). The Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury-selection is permissible only under circumstances where there is a convincing showing by the Government of a "strong reason to believe the jury needs protection." <u>United States v. Thomas</u>, 757 F.2d 1359, 1365 (2d Cir. 1985). Without this predicate showing, an anonymous jury may not be empanelled.

In assessing whether a jury truly "needs protection," and that,

2

therefore, an anonymous jury is "genuinely called for," the Court has emphasized that, "An obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial factor in our decisions regarding anonymous juries." Vario, 943 F.2d at 240; see also United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989). Furthermore, the Court cautioned in Vario, "The invocation of words such as 'organized crime,' 'mob,' and 'the Mafia,' unless there is something more, does not warrant an anonymous jury." Vario, 943 F.2d at 241. Even those cases require "something more." As stated in Vario:

> Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that the connection has some direct relevance to the question of juror fears or safety in the trial at hand beyond the innuendo that this connection conjures up.

Id.

The reason a decision to impanel an anonymous jury may come only after a strong showing of its necessity is that the practice places a burden on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful voir dire. As stated in United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for an anonymous jury, a court "must balance the defendant's interest in

3

conducting a meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Courts do not reach the balancing test, however, without a credible and convincing predicate showing from the Government that there is, in fact, "strong reason to believe the jury needs protection," defined as a finding that there is "a serious threat to jury safety." Thomas, 757 F.2d at 1364-65, Amuso, 21 F.3d at 1264 (quoting Thomas with approval); see also United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence.").

In United States v. Ross, 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

Ross, 33 F.3d at 1519; see also Commonwealth v. Angiulo, 615 N.E.2d 155, 172 (Mass. 1993) ("[T]he empanelment of an anonymous jury triggers due

4

process scrutiny because the practice is likely to taint the jurors' opinion of the defendant, thereby burdening the presumption of innocence.").

In Thomas, the Court considered the impact on a defendant's presumption of innocence of the practice of impaneling an anonymous jury:

> The elementary principle that a shield of innocence surrounds a defendant on trial reached back in history at least to early Roman law. See Coffin v. United States, 156 U.S. 432, 453-54, 39 L.Ed. 481, 15 S.Ct. 394 (1895). Recognition of this principle and its enforcement are part of the foundation of our system of criminal justice. A particular practice – here the impaneling of an anonymous jury – and its impact on the presumption of innocence must therefore receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense.

757 F.2d at 1363.

Because of the importance of the interests that are burdened by the practice, an anonymous jury "is a measure that should be taken only with care." United States v. Bellomo, 954 F.Supp. 630, 654 (SDNY 1997); see United States v. Millan-Colon, 834 F.Supp. 78 (SDNY 1993) (denying application for anonymous jury); United States v. Melendez, 743 F.Supp. 134, 135 (EDNY 1990) (denying "drastic remedy of an anonymous jury"); United States v. Coonan, 664 F.Supp. 861, 862 (SDNY 1987) (denying anonymous jury in the absence of evidence that the defendants – notwithstanding the fact they were charged with "predicate acts including

5

murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies" – were likely to interfere with the judicial process).

As the above summary suggests, even in the proper case, empanelling an anonymous jury burdens the presumption of innocence. The cases that have upheld the practice only have done so based upon particular facts that justified the burden placed on the rights of the defendant. Those facts, however, are not present in Persico's trial.

**B. The Government's request to have the jury transported to and from the courthouse, and maintained under guard while at the courthouse, not only burdens the presumption of innocence but creates the unfair impression that the defendants are dangerous people from whom the jury must be protected.**

The Government proposes that the jurors must be escorted, guarded, and isolated from the public wherever they go, while constantly accompanied by the United States Marshal's Service. In the absence of the "strong showing" of an actual need for protecting the jury, this aspect of the motion should also be denied. Indeed, these measures may in and of themselves engender fear on the part of jurors. In United States v. Millan-Colon, supra, 834 F.Supp. 78 (SDNY 1993), Judge Kram noted that the court's simple directive that jurors eat lunch in the jury room caused one juror to ask, "'[A]re our lives in danger?'" This prompted the court to

observe that "[i]ronically, the very relief that the Government now seeks, which includes sequestering the jury at all recesses, is likely to engender fear on the jurors' part that they are in danger." Millan-Colon, 834 F.Supp. at 78. Highly unusual measures send a clear message to the jury that they are in danger and that the court has decided that jury safety cannot be assured otherwise.

> C. **This case does not present the criteria that justify empanelment of an anonymous and partially sequestered jury**

The Government correctly identifies the five factors relevant to determining the propriety of empanelling an anonymous jury: "(1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either by himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair." United States v. Thai, 29 F.3d at 801. However, none of these factors suggest that an anonymous and partially sequestered jury is necessary or appropriate for Persico's trial.

7

**Points 1 and 2.** **The Seriousness of the Charges and Dangerousness of the Defendant.**

To be sure, Persico is charged with serious crimes. He is alleged to be a captain in the Colombo Crime Family who committed a series of crimes while participating in the charged RICO conspiracy. The racketeering acts alleged against Persico include the murder of Joseph Scopo, a conspiracy to murder John Doe #3, and witness tampering.

The Scopo homicide was committed on October 20, 1993. In 1999, John Pappa was tried and convicted before the Honorable Raymond J. Dearie of murdering Scopo. During Pappa's trail, the Government advanced that Pappa's co-conspirator Eric Curcio received orders to kill Scopo from senior members of the Colombo Crime Family with whom Curcio visited at the Metropolitan Correctional Center in Manhattan. After that visit Curcio put together a team of accomplices and within days, Scopo was murdered.

Now, nearly twenty years after the homicide, the Government advances that Persico (who was then in his twenties and in custody), not senior members of the Colombo Crime Family, ordered Scopo's murder while attending his grandmother's funeral in August of 1993.

While the charge is indeed serious, the evidence is, at best, weak. It consists entirely of the testimony of cooperating witness Anthony Russo; an

8

individual who admittedly committed numerous acts of violence and then was welcomed by the Government when he implicated the defendants in this case. Simply stated, there is nothing to corroborate Russo's statements. Moreover, his statements directly contradict the Government's position in previous court proceedings.

With regard to the charged murder conspiracy, the Government's allegations rest entirely on a recording generated on May 25, 2004. A review of the tapes clearly indicates that not only has the Government misunderstood the content, but also that it will be unable to establish the charged crime.

Notably, the Government was in possession of this recording in 2005 when Persico was indicted and prosecuted in this very District. At that time, the Government advanced in sworn statements and in Persico's Presentence Report that Persico obtained a weapon to ensure his own safety. Now, without any changes in the facts, the Government asserts that Persico obtained a weapon to kill John Doe #3. Plainly stated, the Government's assertion is erroneous.

Finally, with regard to the witness tampering count, a review of the recordings suggests that there is no evidence that Persico participated in such

9

conduct. Indeed the Government's proffer to the Court contains only a bald allegation without any supporting facts.

**Points 3 and 4.** **The Defendant's Ability to Interfere with the Jury and Previous Attempts to Interfere with the Judicial Process**

While the Government list scores of cases in which there were allegations of jury tampering, there is no specific allegation against Mr. Persico. Moreover, it is not enough for the Government to simply state that Persico is a member of the Colombo Crime Family and thus an anonymous jury is appropriate. Rather, Your Honor must make a determination that there is some direct relevance with regard to Persico and the question of juror fears or safety.

As stated above, a review of the evidence establishes that Persico had no involvement in the charged witness tampering allegation. Further, while the Government previously indicted Persico on a witness tampering charge, that charge was dismissed on the Government's motion, and Persico maintains a close personal friendship with the would-be victim.

Notably Persico will remain in custody during the pendency of his trial. Accordingly, he does not have the ability to interfere with the jury and therefore no reasonable juror has cause to fear him personally.

**Point 5.     Media Attention Expected During the Trial**

We respectfully submit that there is nothing to suggest that Persico's trial will garner the type of media attention that could cause extraordinary pressure upon the jury or impair their ability to be fair.

To the contrary, it is the specter of an anonymous jury itself that most threatens juror impartiality in Persico's case, since jury anonymity in and of itself caries the potential to taint the jurors' opinions about the defendant. The interference with the presumption of innocence is a far more serious and realistic consequence than the highly speculative claim that jurors, contrary to their oaths and to the instructions of this Court, would be influenced by media attention.

Furthermore, less burdensome means are available to protect the jury from themselves receiving unwanted media attention. To the extent that this Court feels it is necessary to keep the names of jurors from the public record, Persico does not object to a procedure that allows the parties access to the names and other information concerning the jurors while withholding that information from the public record. In the prosecution of Martha Stewart, a true celebrity placed on trial in a case that was truly highly-publicized, the trial judge, in an effort to protect potential jurors' privacy, closed the voir dire to the media. In reversing that ruling, the Second Circuit noted that the

11

concerns for juror privacy could have been accomplished by "simply concealing the identities of the prospective jurors" from the media. See ABC, Inc. v. Stewart, 360 F.3d 90, 105 (2d Cir. 2004). The Second Circuit also noted that the trial judge in that case had entered an order "prohibiting the media from communicating with jurors or prospective jurors or with their family members until such time as that juror's or potential juror's service was completed." ABC, Inc., 360 F.43d at 94. Persico does not object to a similar order being entered in this case as expanded to include a prohibition from any person having contact with jurors. Nor do we object to the jury being informed of such a court order with instructions from the Court to report any violation of that order.

Finally, it is instructive to recall *why* an elevated level of pre-trial publicity is factored into the mix of circumstances that determine whether or not an anonymous jury should be empanelled. As explained in United States v. Vario, supra, 943 F.2d 236 (2d Cir. 1991):

> Pre-trial publicity may militate in favor of an anonymous jury because it can "enhance the possibility that jurors" names would become public and thus expose them to intimidation by defendants' friends or enemies or harassment by the public.

Vario, 943 F.2d at 240. The defense suggestion that jurors' names be withheld from the public record is a reasonable way to handle such concerns.

12

Similarly, there is no reason for the jury in Persico's trial to be escorted and guarded or to meet at secret locations to be transported to and from the courthouse. The facts and circumstances surrounding Persico's trial simply do not justify imposing potentially prejudicial procedures that in and of themselves carry the danger of tainting the jury's impartiality.

## Conclusion

For the reasons stated, the Government's motion for an anonymous and partially-sequestered jury should be denied. In the event that the Court grants the Government's motion an extensive questionnaire is required.

Dated: Bayside, New York
March 6, 2012

Respectfully submitted,

/S/

Elizabeth E. Macedonio
James C. Neville
*Attorneys for Theodore Persico*