UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

       -against-

THEODORE N. PERSICO, JR.,

              Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CR-147 (S-4) (SLT)

**TOWNES, United States District Judge:**

Count One of the fourth superceding indictment in this case charges defendant Theodore

Persico, Jr. ("Defendant") and several co-defendants with involvement in a racketeering

conspiracy.  Defendant now moves to dismiss this count on double jeopardy grounds, asserting

that the dismissal of a racketeering conspiracy count in a 2005 case bars the racketeering

conspiracy count in this case.  For the reasons set forth below, Defendant's motion is denied.

### *BACKGROUND*

#### *The 2005 Case*

In May 2005, Defendant; his brother, Carmine L. Persico; and his cousin, Andre D'Apice

were indicted in *United States v. Persico*, E.D.N.Y. Docket No. 05-CR-351 (CBA).  Although

the indictment alleged that Defendant was a soldier in the Colombo organized crime family of La

Costa Nostra (the "Colombo Family") and that his two co-defendants were associates of the

Colombo Family, the first two counts charged Defendant alone with racketeering and

racketeering conspiracy.  The indictment also contained two other counts, which charged all three

men with (1) the extortionate collection of credit from two individuals, John Does #1 and #2, and

(2) conspiring to engage in the extortionate collection of credit from John Does #1 and #2.

The racketeering count alleged only two racketeering acts. The first of these could be established by proving that Defendant, together with others, committed one or more of four offenses: conspiring to engage in, or engaging in, the extortionate collection of credit from John Does #1 and #2 in violation of 18 U.S.C. §894(a)(1) or conspiring to engage in, or engaging in, extortion in violation of New York Penal Law §155.40(2). Strangely, three of these four crimes were alleged to have been committed in or about and between October and December 2004, while the state-law extortion was alleged to have been committed between October 2004 and March 2005. The second racketeering act could be established by proving that Defendant, together with others, either conspired to extort money from Jane Doe #1 or attempted to extort money from this individual in violation of New York Penal Law in or about and between November and December 2004. The racketeering conspiracy count incorporated these two racketeering acts by reference.

In August 2005, the government filed a superceding indictment (hereafter, the "2005 Indictment"), which named the same defendants but added two counts. These two counts charged Defendant with witness tampering and a witness tampering conspiracy relating to John Doe #1. The four other counts remained unchanged.

In September 2005, Defendant entered into a plea agreement which provided, *inter alia*, that Defendant would plead to the racketeering count and that, at the time of sentence, the government would "move to dismiss the remaining counts of the superceding indictment and the underlying indictment with prejudice." Plea Agreement (attached to Defendant's Motion to Dismiss Count One of the Superseding Indictment for Violation of Double Jeopardy ["Defendant Memo"] as Ex. B) at ¶¶1, 5(a). The plea agreement further provided that "no further criminal

2

charges" would be "brought against the defendant for (1) violation of 18 U.S.C. §922(g) (felon in possession) on May 25, 2004; (2) the extortionate collection of credit charged in Racketeering Act One, Count Three and Count Four; (3) larceny by extortion charged in Racketeering Act Two; and (4) witness tampering charged in Count Five and Count Six . . . ." Plea Agreement at ¶5(a). However, that same provision of the plea agreement stated that it was "understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§1961 et seq. . . . ." *Id.*

On September 28, 2005, Defendant appeared before U.S. District Judge Carol Bagley Amon to enter his plea of guilty. At the start of the plea proceedings, Defendant's counsel stated that Defendant was offering to plead guilty to "count one of the indictment" – *i.e.*, racketeering in violation of 18 U.S.C. §1962(c) (P. 2).[1] In response to questioning from Judge Amon, Defendant's counsel clarified that Defendant would plead to the extortionate collection of credit conspiracy alleged in Racketeering Act One and the state-law extortion conspiracy alleged in Racketeering Act Two.

The plea allocution did not go smoothly. The racketeering count alleged, in pertinent part, that Defendant, "being a person employed by and associated with the Colombo Family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity." However, when asked to

---

[1]Numbers in parentheses preceded by "P." refer to pages in the transcript of the September 28, 2005, proceedings before Hon. Carol Bagley Amon. This transcript is attached to Defendant's Memo as Exhibit C.

allocate to the crime, Defendant made no mention of the Colombo Family.  Rather, Defendant began by admitting his guilt to the extortionate extension of credit conspiracy charged in Racketeering Act One, stating:

> Racketeering Act One, I, together with others associated in fact, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Does One and Two (P. 26).

When Judge Amon asked Defendant to admit that he was associated with the Colombo Family and had committed Racketeering Act One in furtherance of this criminal enterprise, Defendant refused to do so.  He flatly refused to answer when Judge Amon asked if he was a soldier in the Colombo Family (P. 31), and claimed that either he alone or that he and his co-defendants constituted the "enterprise" that was involved in Racketeering Act One (P. 35-36).

After a two-hour adjournment, the parties proposed having Defendant admit to "association with the charged enterprise and . . . that the participation in [the] racketeering acts . . . were [sic] done in association with that enterprise" (P. 38), rather than make any admissions concerning the Colombo Family.   After a lengthy colloquy, Judge Amon accepted that proposal and Defendant attempted for a second time to allocute to the racketeering charge.  Judge Amon interrupted Defendant repeatedly to clarify his statements.  For example, when Defendant began by stating that he acted "along with others, all of whom were associated with the enterprise charged in the indictment," Judge Amon confirmed that Defendant understood "what the enterprise charged in the indictment" was, and that he was "associated with that enterprise" (P. 50-51). When Defendant described his participation in Racketeering Act One, Judge Amon established, *inter alia*, that Defendant "agreed with others that [he] would beat up . . . two

4

individuals in order to get the money back" (P. 51-52), that Carmine J. Persico was "one of the persons that [he] conspired with" (P. 53), and that it was important to collect the money for the criminal enterprise to continue functioning (P. 54).

Similarly, when Defendant allocuted to Racketeering Act Two, Judge Amon asked Defendant to state who was part of the "conspiracy" charged in that racketeering act (P. 55). The parties then described Defendant's involvement in Racketeering Act Two, stating that Defendant had intervened on behalf of a childhood friend, Ms. Anastasio, to coerce another woman, Ms. Mule (Jane Doe #1), into returning money and documents, and not taking some auto glass from, Ms. Anastasio's business. Noting that Racketeering Act Two charged that Defendant "conspired to steal property by extortion" (P. 59), Judge Amon asked, "Did yu [sic] agree, Mr. Persico, with this woman, Anastasio, that you would threaten, destroying the glass of Ms. Mule if she didn't return – if Mule didn't return the paperwork and money to you, did you form an agreement with Miss Anastasio that that's what you would do . . . ?" (P. 61). However, Defendant never answered that question and ultimately allocuted to the state-law attempted extortion charged in Racketeering Act Two by saying:

> I told the guy [acting on behalf of Ms. Mule] don't take the glass,
> leave the glass. Before I let you take the glass I will make the guy
> break the glass, I was trying to put fear into the guy to leave the
> glass. I hoped that was enough to show that I was trying to use my
> association with the enterprise to scare him to leave it alone . . . .
> (P. 64).

After both parties agreed that this allocution was sufficient to make out the attempted extortion, Judge Amon accepted the plea.

5

On March 14, 2006, Judge Amon sentenced Defendant upon this plea of guilty to 42 months' imprisonment and a three-year term of supervised release (S. 27).[2] After sentence was pronounced, the government moved "to dismiss the remaining counts of the superseding indictment, as well as the underlying indictment as to this defendant" (S. 28). Although the government did not specifically refer to the plea agreement, Judge Amon granted the motion without any further inquiry, saying only, "That application is granted" (S. 28).

### The Instant Indictment

In March 2010, Defendant and several co-defendants – none of whom was Carmine L. Persico or Andre D'Apice – were indicted in this case. That indictment has since been superceded on four subsequent occasions. The fourth superceding indictment (hereafter, the "Instant Indictment") contains a racketeering conspiracy count which alleges that Defendant and five others – all of whom are alleged to be affiliated with the Colombo Family – engaged in a variety of racketeering acts – including murders and conspiracies to murder, witness tampering, embezzlement of Employee Benefit Funds and wire fraud and commercial bribery – over a 22-year period. While 12 of the 25 racketeering acts in the Instant Indictment allege violations of, or conspiracies to violate, 18 U.S.C. §894(a)(1) and/or Penal Law §155.40(2), only three of these 12 racketeering acts – Racketeering Acts Eleven, Thirteen and Sixteen – involve Defendant. Morever, only one of these three racketeering acts – Racketeering Act Eleven – is alleged to have occurred between October 2004 and March 2005, and this act is not alleged to have involved any of the victims named in the 2005 Indictment.

---

[2]Numbers in parentheses preceded by "S." refer to pages in the transcript of the March 14, 2006, proceedings before Hon. Carol Bagley Amon. This transcript is attached to the Government's Opposition to Defendants' Pretrial Motions as Exhibit A.

***Defendant's Motion***

Defendant now moves to dismiss the racketeering conspiracy count from the Instant

Indictment on double jeopardy grounds. First, Defendant argues that jeopardy attached to the

racketeering conspiracy charged in the 2005 Indictment because Judge Amon, in taking the plea

to the racketeering charge, required Defendant "to allocute not simply to the elements of

*racketeering . . . but also to the racketeering conspiracy*." Defendant's Memo at 13 (emphasis in

original). Quoting *United States v. Dionisio*, 503 F.3d 78 (2d Cir. 2007), for the proposition that

jeopardy can attach during a plea hearing at which the judge makes "findings of facts on the

merits such that the defendant was placed in genuine jeopardy by the making of such findings,"

Defendant's Memo at 11, Defendant contends:

> [J]eopardy attached to the dismissed '05 charge of racketeering
> conspiracy as a result of Judge Amon's extensive findings of fact,
> and particularly as a result of her specifically inquiring, and
> requiring Persico to concede, that not merely was he a member of
> the charged enterprise (i.e., the Colombo organized crime family)
> but also that he participated in a conspiracy in support of that
> enterprise.

*Id.* at 13-14.

Second, Defendant argues that the government violated his right not to be subjected to

double jeopardy by "charging the same single wide-ranging pattern of criminal activity" in the

racketeering conspiracy count in the Instant Indictment as was charged in the racketeering

conspiracy count in the 2005 Indictment. *Id.* at 15. After stating that "Double Jeopardy is

violated if both the enterprise and the pattern of racketeering activity alleged in one indictment

are the same as those alleged in another indictment for which the defendant has been previously

placed in jeopardy," *id.* at 16 (emphasis omitted), Defendant notes that the racketeering

conspiracies in both the Instant Indictment and the 2005 Indictment involve the same criminal

enterprise: the Colombo Family.  Asserting that the "only issue is whether the pattern of

racketeering activity is the same," *id.* at 21, Defendant then applies that five-factor test used in

*United States v. Russotti*, 717 F.2d 27, 33 (2d Cir. 1983), and concludes that "the racketeering

acts included in both indictments are unquestionably part and parcel of the same pattern and

same overarching racketeering conspiracy."  Defendant's Memo at 28.

      In response to Defendant's first argument, the government contends that Defendant, in his

2005 plea allocution, "did not admit to conspiring to participate in the affairs of the enterprise

through a pattern of racketeering activity," but rather "admitted to participating in the affairs of

the enterprise and to being a member of various smaller conspiracies that were charged as

racketeering acts" in the racketeering count.  Government's Opposition to Defendants' Pretrial

Motions ("Gov't Memo") at 10.  In addition, the government notes that, even if Defendant

admitted to some elements of the racketeering conspiracy, he was never placed at "genuine risk

of conviction" with respect to this charge, *id.* at 13, and that Judge Amon's dismissal of the

racketeering conspiracy charge was not due to a judicial determination on her part, but was

pursuant to the plea agreement.  *Id.* at 15.

      With respect to Defendant's second argument, the government agrees with Defendant that

"the only issue is whether Count One in the '10 S-4 Indictment alleges a pattern of racketeering

activity distinct from the '05 S-1 Indictment."  *Id.* at 16.  The government also agrees that the

five-factor test set forth in *Russotti* should be used in "assessing whether successive racketeering

counts charge distinct patterns of racketeering activity."  *Id.* at 15.  However, the government

argues that the factor analysis compels the conclusion that the pattern of racketeering activity

charged in the 2005 Indictment is distinct from the pattern of racketeering activity charged in the Instant Indictment.

### *DISCUSSION*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that never "shall any person be subject for the same offence to be twice put in jeopardy of life or limb." "Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003). Accordingly, "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975). In addition, "[a] double jeopardy claim cannot succeed unless the charged offenses are the same in fact and in law." *United States v. Olmeda*, 461 F.3d 271, 282 (2d Cir. 2006) (quoting *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003)).

Both Defendant and the government recognize that resolution of the instant motion requires this Court to determine (1) whether Defendant suffered jeopardy with respect to the racketeering conspiracy charged in the 2005 Indictment and (2) whether that racketeering conspiracy is the same in fact and in law as the racketeering conspiracy charged in the Instant Indictment. In addition, both parties have assumed that this Court will address these questions in this order. However, this Court notes that the Second Circuit has opined that "it is desirable for a district court to decide the [second] . . . question first, and thereby avoid what may be complex constitutional issues." *United States v. Dionisio*, 503 F.3d 78, 82 n.4 (2d Cir. 2007), *cert. denied*, 555 U.S. 825 (2008). Accordingly, while this Court will discuss both questions, it will address the second question first.

9

### *Are the two Racketeering Conspiracies the Same Offenses?*

"[T]he Double Jeopardy Clause protects criminal defendants against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Id.* at 79 (internal quotations and citation omitted). Thus, as noted above, successive prosecutions violate the Double Jeopardy Clause only where the offenses that are the subject of both prosecutions are "the same in fact and in law." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010) (internal quotation marks omitted). When both of these offenses are RICO violations, there is no double jeopardy problem unless the racketeering enterprise and the pattern of racketeering elements are the same in both prosecutions. *See id.* at 200; *United States v. Russotti*, 717 F.2d 27, 33 (2d Cir.1983).

Since both the government and Defendant agree that the enterprise alleged in the Instant Indictment is the same as the enterprise named in the 2005 Indictment, this Court need only determine whether the pattern of racketeering element is the same. The Second Circuit has established a five-factor test for making this determination. Under this test, a court considers:

> (1) [T]he time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge.

*Russotti*, 717 F.2d at 33.

The first four of these factors militate in favor of finding a distinct pattern of racketeering. First, the racketeering acts in the 2005 Indictment are alleged to have occurred in a six-month

10

period between October 2004 and March 2005.  In contrast, the racketeering acts in the Instant Indictment allegedly occurred over a 22-year period between 1989 and 2011.

Second, the racketeering conspiracy alleged in the 2005 Indictment involved an entirely different set of conspirators.  The 2005 Indictment charged Defendant with conspiring with two others:  Carmine L. Persico and Andre D'Apice.  The racketeering conspiracy in this case allegedly involved Defendant and five different co-conspirators:  Edward Garofalo, Jr., Francis Guerra, Michael J. Persico, Thomas Petrizzo and Anthony Preza.  Neither Carmine L. Persico nor Andre D'Apice is named in the Instant Indictment.

Third, the racketeering acts charged in the racketeering conspiracy count in the Instant Indictment involve a far wider range of statutory offenses than did the racketeering acts charged in the earlier indictment.  The racketeering acts in the 2005 Indictment were all extortion-related offenses involving the violation of one of two statutes.  Racketeering Act One charged Defendant with conspiracy to commit, and commission of, extortionate collection of credit in violation of 18 U.S.C. §894(a)(1) and conspiracy to commit, and commission of, extortion in violation of Penal Law §155.40(2).  Racketeering Act Two charged conspiracy to commit, and attempted commission of, extortion in violation of Penal Law §155.40(2).  In the Instant Indictment, in contrast, only three of the seven racketeering acts involving Defendant allege extortion or extortion conspiracy.

Fourth, the nature and scope of the activities charged in the indictments are different.  The racketeering conspiracy count in this case alleges a wide variety of racketeering acts, including two murders, conspiracies to commit murder, witness tampering, embezzlement of Employee Benefit Funds and wire fraud and commercial bribery.  Less than half of the 25 racketeering acts

11

in the Instant Indictment allege violations of, or conspiracies to violate, 18 U.S.C. §894(a)(1) and Penal Law §155.40(2). Morever, only one of these extortion-related racketeering acts allegedly occurred during the six-month period involved in the 2005 Indictment and none of the acts are alleged to involve the victims named in the 2005 Indictment.

While the racketeering acts in this case, like the racketeering acts in the 2005 Indictment, are alleged to have occurred within the Eastern District of New York, this fact alone is insufficient to establish that the pattern of racketeering in both indictments is the same. Accordingly, this Court concludes that the racketeering conspiracies alleged in the 2005 Indictment and in the Instant Indictment are not "the same in fact and in law." *See United States v. Basciano*, 599 F.3d at 196. Thus, even if this Court were to find that jeopardy attached to the racketeering conspiracy charge alleged in the 2005 Indictment, it would not dismiss the racketeering conspiracy in this case on double jeopardy grounds.

### Did Jeopardy Attach to the Racketeering Conspiracy Charged in the 2005 Indictment?

Although there may be no need to determine whether jeopardy attached to the racketeering conspiracy charged in the 2005 Indictment, this Court will nonetheless address this issue. The question of when jeopardy attaches has long been resolved with respect to cases that go to trial. In cases tried before a jury, jeopardy attaches when a jury is empaneled and sworn. *See Downum v. United States*, 372 U.S. 734 (1963). In bench trials, jeopardy attaches when the court begins to hear evidence. *See Wade v. Hunter*, 336 U.S. 684, 688 (1949)). However, only within the last five years has the Second Circuit addressed the question of "[u]nder what circumstances . . . a court's dismissal with prejudice of a charge (pursuant to a plea agreement

12

with the government and prior to a trial by a fact-finder) . . . constitute[s] 'jeopardy' for purposes of the Fifth Amendment." *Dionisio*, 503 F.3d at 79.

*Dionisio* involved facts similar to the facts in this case. Dionisio, like Defendant herein, had previously been charged with another racketeering conspiracy in an indictment which also contained a substantive racketeering charge. At least some of the racketeering acts alleged in those two counts, such as a conspiracy to distribute marijuana between January and May 1999, were the same.

Dionisio entered into a plea agreement which, in many respects, resembled the 2005 plea agreement in this case. Defendant agreed to plead guilty to the racketeering count and the government agreed to dismiss the racketeering conspiracy count at the time of sentencing. That plea agreement also contained language providing that no further criminal charges would be brought against the defendant for the specific crimes charged in the indictment in that case, but that the agreement did not "bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§1961 *et seq.*" *Id.* at 80.

In 2004, a few years after pleading guilty to the racketeering count, Dionisio was again charged with racketeering conspiracy. One of the four racketeering acts alleged in connection with this offense was a conspiracy to rob marijuana from narcotics traffickers between August 1998 and May 1999. Alleging that this robbery conspiracy was based on the same conduct which formed the basis of the marijuana conspiracy which had been included as a racketeering act in the earlier racketeering conspiracy charge, Dionisio moved to dismiss the 2004 indictment on, *inter alia*, double jeopardy grounds.

13

The district judge denied this motion, categorically holding that "jeopardy did not attach when the racketeering conspiracy charge was dismissed with prejudice . . . pursuant to defendant's plea agreement." *United States v. Dionisio*, 415 F. Supp. 2d 191, 199 (E.D.N.Y. 2006). On appeal, however, the Second Circuit declined to endorse the view "that jeopardy may never attach as a result of a pretrial dismissal with prejudice." *Dionisio*, 503 F.3d at 79. Rather, the Court held "that in order for a pretrial dismissal to trigger the protections of the Double Jeopardy Clause, there must be an adjudication of elements of the offense charged, in a way that reflected a genuine risk of conviction." *Id.*

In reaching this decision, the Second Circuit interpreted Supreme Court precedents as "underscor[ing] the need to look beyond the form of the court's pretrial ruling to its substance in order to determine whether the dismissal actually represented a '*resolution, correct or not, of some or all of the factual elements of the offense charged.*'" *Id.* at 83 (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)) (emphasis added in *Dionisio*). The Second Circuit stated:

> The *Serfass-Martin Linen* framework requires that we look beyond formalistic labels of acquittal or conviction and scrutinize the substantive resolution underlying that disposition. But these decisions also confirm that it is not necessary to have an actual acquittal or, for that matter, a conviction, in order to trigger double jeopardy. What is crucial, instead, is whether the defendant faced the risk of a determination of guilt, and this may well include exposure to risk of conviction in a pretrial plea proceeding. Thus, the key issue, even in a pretrial context, is whether the disposition of an individual's indictment entailed findings of facts on the merits such that the defendant was placed in genuine jeopardy by the making of such findings.

*Id.*

14

The Second Circuit provided only one example of an instance in which jeopardy might attach in the course of plea proceedings. The Court opined that "a plea agreement in which the court was directly involved in a defendant's decision to plead guilty to two counts, in exchange for an agreement to drop with prejudice a third count, all on the basis of findings of certain facts which support that agreement, might perhaps constitute a pretrial fact-finding that implicated jeopardy in its proper sense of risk of exposure." *Id.* at 84. However, the Court also noted that, since Fed. R. Crim. P. 11(c)(1) currently bars federal judges from participating in plea discussions, such a scenario might only arise in state court proceedings. *Id.* at 84, n. 5.

The Second Circuit then held that no jeopardy had attached as a result of Dionisio's plea agreement and the subsequent dismissal of the remaining counts of the indictment, including the racketeering conspiracy count, with prejudice. The Court stated:

> The record discloses only an agreement *between the parties* that following Dionisio's plea of guilty to one count of substantive racketeering, the government would move to dismiss the remaining counts with prejudice. The government, in fact, made such a motion, and the court duly dismissed the other counts. But we do not know the reason or basis for that dismissal. And there is nothing in the record to suggest that the dismissal entailed a resolution of any factual elements that went to the merits of the charges against Dionisio. There is, moreover, certainly no indication that any such resolution (assuming *arguendo* that one had occurred) involved a process that put Dionisio at any risk of conviction.

*Id.* at 89 (emphasis in original).

Dionisio petitioned the Second Circuit for either a panel rehearing or a rehearing *en banc,* asserting that his factual allocution to the substantive RICO charge in the earlier indictment resulted in the resolution of some or all of the elements in the RICO conspiracy charge which

15

was contained in that same indictment and was dismissed with prejudice at sentencing.  In his petition, Dionisio noted that he had

> allocuted that between November 1993 and April 2001 in the Eastern District of New York and elsewhere he was part of the enterprise charged in the indictment, which engaged in activities that affected interstate commerce, and knowingly and intentionally participated in the conduct of the affairs of that enterprise through a pattern of racketeering activity.  He further allocuted, in some detail, to the commission of all six racketeering acts alleged in both the RICO substantive count and RICO conspiracy count . . . .

Brief of Defendant-Appellant Dionisio, dated Oct. 11, 2007, 2007 WL 6496991, at *2-*3. However, the Second Circuit denied rehearing, rejecting the argument "that allocuting to 'some' elements relevant to the conspiracy charge placed him at genuine risk of conviction." *United States v. Dionisio*, 415 Fed. Appx. 294, 295 (2d Cir. 2011) (citing *United States v. Dionisio*, No. 06–0908–cr (2d Cir. Mar. 24, 2008) (order denying rehearing)).

Defendant's arguments in this case echo those raised in Dionisio's petition for rehearing. Specifically, Defendant asserts that jeopardy attached to the racketeering conspiracy count contained in the 2005 Indictment "as a result of Judge Amon's extensive findings of fact, and particularly as a result of her specifically inquiring, and requiring Persico to concede, that not merely was he a member of the charged enterprise (i.e., the Colombo organized crime family) but also that he participated in a conspiracy in support of that enterprise." Defendant's Memo at 13-14. Defendant contends that this questioning required Defendant "to allocute not simply to the elements of *racketeering* . . . but also to the *racketeering conspiracy*." Defendant's Memo at 13 (emphasis in original).

16

As a factual matter, this Court disagrees with the suggestion that Judge Amon, by requiring Defendant to admit his membership in the charged enterprise and his participation in conspiracies in furtherance of that enterprise, required Defendant to allocute to more than the elements of the racketeering charge. To prove the racketeering charge alleged in the 2005 Indictment, the government would have had to prove, *inter alia*, that Defendant (1) was associated with a racketeering enterprise and (2) participated in the affairs of the enterprise through a pattern of two or more specified racketeering activities. *See* Leonard B. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 52-19S, p. 52-31 (2011). To satisfy herself that Defendant committed the first of these elements, Judge Amon required Defendant to admit that he was "associated with" the enterprise alleged in the 2005 Indictment (P. 51). Moreover, because the two racketeering acts to which Defendant initially attempted to allocute were themselves conspiracies – *i.e.*, the extortionate collection of credit conspiracy alleged in Racketeering Act One and the state-law extortion conspiracy alleged in Racketeering Act Two – Defendant had to allocute to his participation in the conspiracies and explain how they furthered the enterprise.

Because the racketeering conspiracy count alleged in the 2005 Indictment incorporated by reference the racketeering acts alleged in the racketeering count of that indictment, Defendant's allocution to the racketeering charge also made out elements of the racketeering conspiracy count. However, allocuting to some elements relevant to the conspiracy charge did not place Defendant at genuine risk of conviction on that count. *See Dionisio*, 415 Fed. Appx. at 295. Defendant, like Dionisio, pled guilty only to a substantive racketeering charge pursuant to a plea agreement with the government which required the government to move to dismiss the remaining

17

counts, including a racketeering conspiracy charge, with prejudice at sentencing.  After Defendant was sentenced on the racketeering count, the government made such a motion and the court dismissed the other counts contained in the 2005 Indictment without further comment. There is nothing in the record to suggest that the dismissal entailed a resolution of any factual elements that went to the merits of the racketeering conspiracy charge contained in that indictment.  Moreover, even assuming that such a resolution had occurred, there is nothing to indicate that such resolution involved a process that put Defendant at any risk of conviction. Accordingly, in this case, as in *Dionisio*, no jeopardy attached to the racketeering conspiracy charge which was dismissed in the prior proceedings.

### CONCLUSION

For the reason set forth above, defendant Theodore N. Persico, Jr.'s motion to dismiss Count One of the fourth superceding indictment in this case on double jeopardy grounds is denied.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated:  May 7, 2012
            Brooklyn, New York

18