UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES,

v.

10 Cr. 147 (S-4) (SLT)

FRANCIS GUERRA, et al,

Defendants.

-----------------------------------------------------------X

## DEFENDANT THEODORE N. PERSICO, JR.'S
## RESPONSE TO THE GOVERNMENT'S
## IN LIMINE MOTIONS

ELIZABETH E. MACEDONIO, ESQ.
42-40 Bell Blvd., Suite 302
Bayside, NY 11361
(718) 279-3770

JAMES C. NEVILLE, ESQ.
14 Vanderventer Ave., Suite 115
Port Washington, NY 11050
(516) 883-5905

*Attorneys for Theodore N. Persico, Jr.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

       -against-                 10 CR 147 (S-4) (SLT)

FRANCIS GUERRA, et al,

           Defendants.
------------------------------------------------x

MEMORANDUM OF LAW BY DEFENDANT THEODORE N. PERSICO, JR.
IN OPPOSITION TO GOVERNMENT'S FIRST AND SECOND
MOTIONS IN LIMINE

PRELIMINARY STATEMENT

On May 8, 2012, the government submitted a motion in limine seeking to admit at trial evidence of certain acts by the defendants Francis Guerra, Michael Persico and Theodore N. Persico, Jr.. ("Gov't 1st motion")(ECF # 451 Filed 05/08/12)

Thereafter, on May 9, 2012, the government submitted a second motion in limine advising that at trial, it will seek to introduce evidence of (1) recorded 911 calls to the police which were placed immediately after Joseph Scopo was killed on October 20, 1993; (2) recorded statements by John "Sonny" Franzese and one of the defendants' co-conspirators; (3) recorded statements by co-conspirator Ralph

2

DeLeo, and (4) recorded statements of co-defendant Edward Garofalo. In that same motion, the government also moved this Court to reconsider its May 1, 2012 order severing Michael Sciaretta and Louis Romeo from the trial of the remaining co-defendants. ("Gov't 2nd motion")(ECF # 456 Filed 05/09/12)

This memorandum is submitted on behalf of Theodore N. Persico, Jr. ("Mr. Persico, Jr.") in opposition to the government's first and second motions in limine with regard to evidence that is pertinent to Mr. Persico, Jr.'s defense. Mr. Persico, Jr. joins in the additional objections of his co-defendants to the extent their arguments are not inconsistent with those made herein.

## THE GOVERNMENT'S FIRST MOTION IN LIMINE

### THE "OTHER ACT" EVIDENCE AND TESTIMONY IS NOT ADMISSIBLE UNDER FEDERAL RULES OF EVIDENCE 404(B) AND 403.

The government asserts that the prior act evidence it seeks to admit at trial is admissible A) to establish the racketeering enterprise or conspiracy, B) to complete the story and to show relationships of trust, and C) to establish motive, opportunity, intent, preparation, plan, knowledge, identity or absence or mistake or accident.

Evidence of "other crimes, wrongs, or acts" may be introduced under Federal Rule of Evidence 404(b) if, and only if, it is substantially relevant for some

3

purpose other than to show a probability that the defendant committed the crime at issue because he is a man of criminal character. Fed. R. Evid. 404(b). The purpose of Rule 404(b) is "simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence." *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008) (internal citation omitted).

The Second Circuit follows an "inclusionary approach" with respect to Rule 404(b) evidence and "allows evidence for any purpose other than to show a defendant's criminal propensity." *United States v. Lombardozzi*, 491 F.3d 61, 78 (2d Cir. 2007) (internal quotation marks omitted). Yet, this inclusionary approach is not intended to allow the government to "offer, carte blanche, any prior act of the defendant." *United States v. William Scott*, _ F3d_, No. 10-3978-cr (2d Cir., April 6, 2012); *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002). Rather, the admission of other-act evidence must be carefully scrutinized because it "easily lends itself to generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of innocence." *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009)

Thus, in order to be admissible under Rule 404(b), the "other acts" evidence must pass muster under the following four-part test: (i) the prior act evidence must

be offered for a proper purpose; (ii) the evidence must be relevant to a disputed

issue; (iii) the probative value of the evidence must be substantially outweighed by

its potential for unfair prejudice pursuant to Federal Rule of Evidence 403; and (iv)

the court must administer a proper limiting instruction if requested. *Huddleston v.*

*United States*, 485 U.S. 681, 691-92 (1988).

## The Government's Proffer

In the motions submitted, the government seeks permission to introduce the

follow uncharged crimes and other act evidence that pertain to Mr. Persico, Jr.:

1.  Recorded statements of Patrick Bombino on January 22, 2009, claiming that Edward Garofalo committed murder(s) for the Persico family (Gov't 1st motion p. 25);

2.  Testimony that Mr. Persico, Jr., told CW4 to be prepared Murder Joel Cacace (Gov't 1st motion pp. 28-29);

3.  Testimony that Mr. Persico, Jr., Guerra and CW4 distributed narcotics and committed extortions related to the distribution of narcotics in the 1980s, and testimony from CW1 that CW1 distributed cocaine in the 1980s and that he discussed with Mr. Persico, Jr. and Guerra their involvement in cocaine distribution in the same neighborhood in the same time period (Gov't 1st motion p. 31);

4.  Testimony that Mr. Persico, Jr., participated in extortions relating to: a) yearly tribute money, b) protection money and c) illegal gambling money (Gov't 1st motion pp. 33-35);

5.  Testimony that Mr. Persico, Jr., participated in meetings known as "sitdowns," during which he used his influence in the Colombo family to settle disputes within the family and with other families (Gov't 1st motion p. 35);

5

6.    Testimony from cooperating witnesses and consensual recordings in which Mr. Persico, Jr., expressed his belief that a) violence is the only means of ensuring that others follow his directions (Gov't 1st motion p. 38); b) that Mr. Persico, Jr., wanted to assault an individual who owed substantial sums of money to the Persico family (Gov't 1st motion p. 38); and c) testimony that Mr. Persico, Jr., repeatedly threatened to assault an individual who robbed from Bella Luna, a restaurant owned by the Persico family (Gov't 1st motion p. 38).

The testimony proffered by the government is admissible only if the government can prove that it is relevant to an issue at trial other than Mr. Persico, Jr.'s character, and that its probative value is not substantially outweighed by the risk of unfair prejudice. Because the government has failed to make this basic showing, the Court should exclude the testimony under Rules 404(b) and 403.

## 1.    Patrick Bombino's statement

On page 25 of its May 8, 2012 Motion, the government asserts that it intends to introduce conversations with P. Bombino, recorded by CW5. During one of these conversations, P. Bombino discusses the involvement of the defendants and their co-conspirators in the Colombo family war. Specifically, on January 22, 2009, P. Bombino explained that Garofalo had 'done a couple of nice things during the war,' that the Persico's consider that to be an honor, and that if Garofalo ever cooperated, Persico, Jr. would go to jail for the rest of his life.

6

There are several reasons for excluding the proffered evidence from Mr. Persico Jr.'s trial. First, the person allegedly uttering these words is "P. Bombino." There is no indication by the government why "P. Bombino" would be a reliable source of information. Nor is there is any indication that P. Bombino's statements are accurate. It is worth noting that the government has investigated crimes related to the Colombo "war" for over two decades and Garofalo has never been implicated or charged in any activity related to the "war." Second, "P. Bombino" is allegedly speaking of "Garofalo", presumably Edward Garofalo, a co-defendant of Mr. Persico, Jr.. According to this statement offered by government, it is Garofalo who is alleged to have "...done a couple of nice things during the war...", not Mr. Persico, Jr. or any of his trial defendants. Notably, Garofalo recently entered a guilty plea and will not be standing trial with Mr. Persico Jr.. Third, the alleged statement is vague, speculative, and full of potential prejudice. The possible interpretations of what P. Bombino meant by "...a couple of nice things during the war..." are infinite and would invite the jury to speculate and conclude, unfairly and unjustifiably, that Garofalo committed violent acts, and even murders during the "war."

The government is aware that in light of the Colombo "war," and the evidence that Joseph Scopo was murdered in the course of that war, a rational juror

would undoubtedly conclude that Garofalo committed murders and other violent acts during the "war." Under these circumstances, the prejudice that would result from this proffered "other act evidence" far outweighs any probative value, and that granting the government's application for the admission of this evidence would be a clear-cut violation of Fed. R. Evid. 403.

Fed. R. Evid. 403 recognizes the discretion enjoyed by a district judge in determining whether to admit other-crimes evidence. Fed. R. Evid. 403 authorizes this Court to exclude concededly relevant evidence if the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Factors such as undue delay, waste of time, and needless presentation of cumulative evidence must also be weighed. Fed. R. Evid. 403; See e.g., *United States v. Howell*, 285 F. 3d 1263, 1266 (10th Cir. 2002).

To allow this ambiguous but potentially explosive statement by a non-party (P. Bombino) with regard to a person not being tried (Garofalo) would be a clear abuse of discretion. The statement is rank hearsay and should not be admitted under any exception to the hearsay rule. In fact, the proffered statement by P. Bombino appears to be nothing more than idle chatter or vague, valueless gossip

8

that might mislead the jury from the legitimate issues they will be required to consider.

Furthermore, the statement does not appear to have been made in furtherance of the charged conspiracy and is therefore not admissible under Fed. R. Evid. 801(d)(2)(E). In *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987), the Supreme Court interpreted the scope of Fed. R. Evid. 801(d)(2)(E). In *Bourjaily*, the Court held that it is the duty of the trial judge, rather than the jury, to determine whether the requirements of the Rule have been satisfied. The 1997 amendment to Fed. R. Evid. 801(d)(2)(E) codified that holding. Also, the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. According to the legislative history of the 1997 amendment, in determining a statement's admissibility, this Court must consider the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement. See e.g., *United States v. Williams*, 340 F.3d 563, 568 (8th Cir. 2003).

Considering the circumstances surrounding the statement, including the identity of the speaker and the context in which this statement was made, P. Bombino's statement should not be admitted into evidence at Mr. Persico Jr.'s

trial. Significantly, P. Bombino does not indicate the source of this alleged information. Accordingly, there is no basis for concluding that the proffered statement is reliable. Moreover, there is no indication that P. Bombino was himself a reliable source of information and the context in which the statement was uttered does not provide any independent indicia of reliability.

The most troubling aspect of the government's proffered statement of P. Bombino, and its enormous potential for prejudice is the reference to Theodore N. Persico, Jr.. Admitting the statement would inevitably cause the jury to conclude that Garofalo committed violence during the "war," and that Theodore Persico, Jr., somehow participated in Garofalo's violent acts. The notion that in the event Garofalo were to cooperate with the government, Mr. Persico, Jr., .. "would go to jail for the rest of his life…" implies that Mr. Persico, Jr. was involved in the "couple of nice things [Garofalo did] during the war," and that it is therefore likely that he is guilty of the racketeering conspiracy and possibly, conspiracy to murder and the actual murder of Joseph Scopo as well.  Needless to say, Mr. Persico, Jr. would be gravely prejudiced by the admission of such evidence. For all of the foregoing reasons, the evidence should be excluded.

## 2.   Conspiracy to Murder Joel Cacace

The government further requests that the Court permit

10

> "CW4 [to] testify that Persico, Jr., asked him to accompany Persico, Jr., and Frank Smith, a close associate of Persico, Jr.'s, to see Joel Cacace, also known as 'Joe Waverly," a powerful member of the Colombo family, who they believed was going to murder Frank Smith. Persico, Jr., told CW4 that if Waverly resisted when Persico, Jr., told Waverly that Smith would now be accountable to him and not Waverly, CW4 should be prepared to shoot Waverly in the head."

(Gov't 1st motion pp. 28-29)

This portion of the government's motion should also be denied. First, the alleged statement by Mr. Persico Jr. has no bearing on any of the substantive counts in this indictment. While the government might argue that the above-proffered evidence is relevant to the racketeering enterprise charged in this case, the indicia of reliability are highly questionable and a careful weighing of the evidence pursuant to Rule 403 compels the conclusion that the probative value of this evidence is strongly outweighed by its potential to cause prejudice.

Evidence of other crimes, wrongs, or acts always carries the potential for causing prejudice. See, e.g., *United States v. Boone*, 279 F.3d 163, 176, n.7 (3rd Cir. 2002) (other acts evidence is dangerous because, although prosecutors will not admit it, it generally is offered, in part, to impugn defendant's character...") When evaluating the probative value of other act evidence, this Court should consider, among other things, the similarity between the charged and uncharged acts. See,

11

e.g., *United States v. Anifowoshe*, 307 F.3d 643, 646, 647 (7th Cir. 2002). In this case, the charged and uncharged acts are fairly similar. Consequently, there is a strong risk that if the other act evidence is admitted, the jury might conclude that Mr. Persico, Jr. is prone to commit acts of violence and is therefore guilty of the crimes charged.

The Court should also consider the reliability of the evidence being proffered, *United States v. Peterson*, 808 F.2d 969, 975 (2d Cir. 1987), and its temporal relationship with the charged offenses. *United States v. Franklin*, 250 F.3d 653, 659 (8th Cir. 2001). In this regard, the government has given absolutely no indication that the proffered evidence is reliable. Nor has the government asserted or established that CW4 is a credible witness. In fact, the government has not even indicated when the statements were allegedly made so as to enable the defense to probe their accuracy and reliability. Nor has the government shown the need for the evidence. *United States v. Haywood*, 280 F.3d 715, 723-724 (6th Cir. 2002). The government has stated that this evidence shows Mr. Persico, Jr.'s position in the enterprise and his commitment to the stated goals of the enterprise. However, there is no indication by the government that the proffered evidence by CW4 shows Mr. Persico, Jr.'s position in the alleged racketeering enterprise. The probative value of such evidence is therefore minimal, at best.

### 3. Cocaine Distribution and Related Extortion

The government proffers that CW4 is expected to testify that he ran a cocaine distribution operation with Persico, Jr., in the 1980s that employed Guerra. As part of their control of the neighborhood's cocaine distribution ring, CW4 and Persico, Jr., extorted other individuals selling drugs in the neighborhood by forcing them to pay protection money. Further, it is anticipated that CW1 will testify that he distributed cocaine in the 1980s and that he discussed with Mr. Persico, Jr. and Guerra their involvement in the same neighborhood in the same time period. It is submitted that the limited probative value of such evidence is substantially outweighed by its prejudicial impact and that the evidence should therefore be excluded.

In the first place, evidence that Mr. Persico, Jr. was involved in the distribution of cocaine and extorted other drug distributors more than a quarter century ago is so remote that it has little if any bearing on the government's contention that it establishes the relationships of trust among the respective parties, and that it somehow establishes Mr. Persico, Jr.'s participation with Guerra and CW1 in the racketeering conspiracy and Scopo murder.

Moreover, evidence of Mr. Persico, Jr.'s cocaine distribution in the 1980s has virtually no probative value with respect to the crimes with which he is

13

currently charged. However, the evidence certainly poses an enormous risk of prejudice to Mr. Persico, Jr. in the event it is introduced at trial. Even the most thorough limiting instruction would not lessen the risk that the jurors might find Mr. Persico, Jr. guilty of the charged crimes not because they were fully convinced of his guilt, but because they had concluded that he was a drug dealer and was therefore morally suspect and capable of committing virtually any crimes imaginable.

Finally, while it is contended that evidence of Mr. Persico, Jr.'s cocaine distribution in the 1980s establishes his "commitment to the goals of the enterprise", the government fails to substantiate such a claim. Without any explanation as to how such activities demonstrated Mr. Persico, Jr.'s commitment to the goals of the enterprise, the evidence should be excluded because it is remote in time and because its minimal probative value is substantially outweighed by its potential for unfair prejudice pursuant to Fed. R. Evid. 403.

## 4. Mr. Persico Jr.'s Involvement in Extortion

Through the introduction of consensual recordings, the government seeks to introduce evidence regarding Mr. Persico Jr.'s alleged involvement in extortion relating to yearly tribute payments, protection payments and illegal gambling payments. This portion of the government's motion should certainly be denied.

14

In the first place, the government has offered the Court an extremely distorted interpretation of the incidents in question. While it may be true that the moneys that were discussed during the recorded conversations were derived from gambling activities, there were no extortion demands made in connection with those moneys either by Mr. Persico, Jr., or by any other person acting on his behalf. In actuality, it appears that the discussions in question involved attempts by gambling associates to increase their share of the gambling proceeds and did not represent attempts by Mr. Persico, Jr. to extract so-called "tributes" from those individuals. The government's attempt to place a sinister interpretation on those conversations would mislead the jury cause substantial prejudice to Mr. Persico, Jr. Thus, even if it could be concluded that such prior act evidence would help a jury to understand the basis for the relationship of mutual trust between Mr. Persico, Jr. and CW1, *United States v. Rosa*, 11 F3d 315 (2d Cir. 1993), the tendency that such evidence would have to mislead and confuse the jury would far outweigh its limited probative value. *See, Old Chief v. United States, supra.* The evidence should therefore be excluded.

15

## 5.    Testimony Regarding "Sitdowns"

The government seeks to introduce evidence that Mr. Persico, Jr. engaged in
so-called "sitdowns" to settle disputes that arose within the family and with other
families. This portion of the government's motion is patently insufficient.

While the government contends that the occurrence of such "sitdowns"
constitutes critical evidence of the enterprise and its manner of operation, the
evidence in question simply does not support such a conclusion. The government
premises its proffer on the speculative prediction that the defense may argue that
Mr. Persico, Jr. was not associated with organized crime and that the employment
of "sitdowns" would refute that defense. But the government's application to
admit such evidence is premature.

As the Court of Appeals held in *United States v. Figueroa*, 618 F.2d 934,
939 (2d Cir. 1980), generally, the introduction of other acts evidence "should await
the conclusion of the defendant's case and should be aimed at a specifically
identified issue. This enables the trial judge to determine whether the issue sought
to be proved by the evidence is really in dispute and, if so, to assess the probative
worth of the evidence on this issue against its prejudicial effect". In this case, the
contention that the defense may argue that Mr. Persico, Jr. was not associated with
organized crime is highly conjectural. Unless or until such an argument is made,

16

this Court has no basis for permitting the government to offer so-called "sitdown"
evidence to refute a defense that hasn't been advanced. Since there may be no
dispute with respect to the issue which the government is seeking to refute, the
evidence should be excluded at this time.

## 6. Evidence Regarding Mr. Persico Jr.'s View of Violence and Conversations Related To Contemplated Acts of Violence

The government wishes to introduce evidence that during a recorded
conversation, Mr. Persico, Jr. expressed the belief that "violence is the only means
of ensuring that others follow his directions" and that during that same
conversation, he indicated that he wanted to "beat up" an individual who had
borrowed substantial sums of money from the Persico family. Evidence of this
conversation should surely be excluded.

Fed. R. Evid. 404 (b) provides in pertinent part that "[e]vidence of a crime,
wrong, or other act is not admissible to prove a person's character in order to show
that on a particular occasion the person acted in accordance with the character".
Evidence of a defendant's propensity to engage in criminal behavior is not
admissible even under the Court of Appeals' "inclusory approach" to evidence of
prior acts. *See, United States v. William Scott*, __ F.3d __, No. 10-3978-cr (2d
Cir., April 6, 2012).

In this case, evidence that Mr. Persico, Jr. expressed the sentiment that violence was the surest way of enforcing his directions would inevitably lead the jury to conclude that he had a propensity to commit acts of violence and that he was more likely to have committed the violent crimes with which he is charged than if such evidence had not been introduced. Based on the substantial likelihood that evidence of Mr. Persico, Jr.'s belief regarding violence would lead the jury to believe that he had a propensity for violence, regardless of any limiting instructions that might be given, such evidence should be excluded to ensure that Mr. Persico, Jr.'s right to a fair trial is safeguarded.

For similar reasons, evidence of Mr. Persico, Jr.'s expressed desire to assault an individual who had allegedly stolen money from a restaurant owned by the Persico family should be excluded as well. The limited probative value of such evidence is substantially outweighed by the danger of unfair prejudice or confusion of issues since it could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense[s] charged" *Old Chief* at 180. Given the substantial risk that a jury could conclude that Mr. Persico, Jr.'s expressed desire to assault an individual for stealing demonstrated his propensity for violence, and made it more probable that he participated in the murder with which

18

he is charged in this case, this Court should preclude the government from offering such evidence.

## THE GOVERNMENT'S SECOND MOTION IN LIMINE

In its second motion in limine the government seeks to admit the following information that pertains to Mr. Persico, Jr.;

> (1) recorded 911 calls to the police which were placed immediately after Joseph Scopo was killed on October 20, 1993;
>
> (2) recorded statements of co-defendant and co-conspirator Edward Garofalo

## 1)   THE 911 CALLS

The government argues that it should be permitted to introduce a total of fourteen (14) recorded 911 calls made by various individuals to the New York City Police Department shortly after the shooting death of Joseph Scopo on October 20, 1993.   In support, the government contends that the calls qualify as excited utterances or present sense impressions pursuant to Fed. R. of Evid. 803 (2) and 803 (1) and do not violate the Sixth Amendment right of confrontation because they are not "testimonial" pursuant to the Supreme Court's holding in *Davis v. Washington*, 547 U.S. 813 (2006).   The government's argument is correct as far as it goes.   But it doesn't go far enough to enable this Court to make a reasoned determination regarding the admissibility of the recordings in question.

19

While the recorded 911 calls may qualify as either excited utterances or present sense impressions, and may be considered non-testimonial and therefore not violative of the right of confrontation, those circumstances, in and of themselves, do not warrant their admission in evidence. To the extent that evidence of those calls may be relevant in this case, this Court must still consider whether the "probative value [of such evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" pursuant to the dictates of Fed. R. Evid. 403. Evidence is prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:13 (3d ed. 2008). When relevant evidence has a prejudicial effect, "Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (1980). Based on these criteria, evidence of the recorded 911 calls should be excluded.

20

In the first place, there is no probative value in the evidence of the 911 calls

to any disputed issue in this case. The defense is certainly not contesting the fact

that Joseph Scopo was shot to death as he pulled up in front of his home on

October 20, 1993. Thus, evidence that neighbors and family members called 911

to inform the police that a shooting had just occurred is completely unnecessary to

address any disputed issue and would shed no light on the only material question

for the jury to determine – whether the defendants are the individuals responsible

for Mr. Scopo's murder.

Moreover, even if it could be concluded that evidence of the 911 calls had

some slight relevance to some disputed issue, a number of those calls are so

inflammatory that their probative value is far outweighed by their potential for

unfair prejudice. *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *United

States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987). A review of the recorded 911

calls proffered by the government discloses that several of those calls were made

by members of Mr. Scopo's family. In particular, some of those calls were made

by Mr. Scopo's wife who can be heard shrieking and begging for the police to

come to the aid of her mortally wounded husband. The admission of those

recorded calls would serve one purpose and one purpose only – to arouse the

emotions of the jurors and to lure them into "declaring guilt on a ground [such as

21

sympathy] different from proof specific to the offense charged." *Old Chief*, 519
U.S. at 180.

In short, the extremely limited probative value of the recorded 911 calls is
substantially outweighed by the danger of unfair prejudice or confusion of issues.
The government does not need such evidence to prove that Joseph Scopo was shot
to death on the day in question.   Accordingly, this Court should deny the
government's motion to introduce such evidence at the trial of this case.

**2)   Recorded Statements of Edward Garofalo**

The government seeks to introduce recorded statements of Edward Garofalo
regarding an incident in which he allegedly assaulted a truck driver for repeatedly
honking his horn.   To support the admissibility of those statements, the
government argues that they are co-conspirator statements, and that they constitute
statements against Garofalo's penal interest.   It is submitted that the government's
contentions are without merit.

For one thing, the statements made by Garofalo do not appear to have been
made in furtherance of the conspiracy and are therefore not admissible pursuant to
Fed. R. Evid. 801(d)(2)(E).   The assault of the truck driver seems to have been the
result of a spontaneous dispute that arose between him and Garofalo and was
personal in nature.   Simply put, the incident had nothing to do with any

racketeering conspiracy and Garofalo's conversation about the incident with his wife was not in furtherance of such an alleged conspiracy. Considering the circumstances surrounding the statements, the identity of the speaker, and the context in which the statements were made, it cannot be concluded that the statements are admissible.

Furthermore, the government's argument that Garofalo's statements are admissible because they were against his penal interest is simply unfounded. Some of Garofalo's statements regarding the incident indicate that he struck the truck driver in self defense. For example, he told Anthony O'Donnell, "One of the drivers, he attacked, physically attacked me .... So I, defended myself". Such a statement can scarcely be characterized as a statement against penal interest since it suggests that Garofalo acted with some degree of justification when he struck the truck driver. In any event, it is far from clear that the recorded statements attributed to Garofalo are admissible under any hearsay exception at Mr. Persico, Jr.'s trial. Accordingly, the government's motion to introduce those statements should be denied.

## Conclusion

For all of the reasons stated above, the government's motions should be denied. Mr. Persico joins in the motions of his co-defendants to the extent that they are not inconsistent with the arguments made herein.

Dated: Bayside, New York
May 25, 2012

Respectfully submitted,

/S/

Elizabeth E. Macedonio
James C. Neville
*Attorneys for Theodore N. Persico, Jr.*