TM:NMA/RN/AL
F.#2010R00195

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

THEODORE N. PERSICO, JR.,
    also known as
    "Skinny" and
    "Teddy,"

                Defendant.

S U P E R S E D I N G
I N F O R M A T I O N

Cr. No. 10-147 (S-7)(SLT)
(T. 18, U.S.C., §§
1959(a)(5) and 3551 et
seq.)

- - - - - - - - - - - - - - - - -X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Superseding Information, unless otherwise indicated:

The Enterprise

1. The members and associates of the Colombo organized crime family of La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact (hereinafter the "Colombo crime family" and the "enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Colombo crime family engaged in, and its activities affected, interstate and foreign commerce. The Colombo crime family was an

organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families - the Bonanno, Colombo, Gambino, Genovese and Luchese crime families - were headquartered in New York City, and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decalvacante crime family, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Colombo crime family had a hierarchy and structure. The head of the Colombo crime family was known as the "boss." The Colombo crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa

Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Colombo crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Colombo crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5.  Below the administration of the Colombo crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6.  Only members of the Colombo crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as

"goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7. Many requirements existed before an associate could become a member of the Colombo crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime

family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8. The principal purpose of the Colombo crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Colombo crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, bribery, embezzlement, illegal gambling and loansharking. The members and associates of the Colombo crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Colombo crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included

a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendant

12. At various times, the defendant THEODORE N. PERSICO, JR., also known as "Skinny" and "Teddy," was a member of the administration, a captain, a soldier and an associate within the Colombo crime family.

### CONSPIRACY TO MURDER IN-AID-OF RACKETEERING

13. The allegations in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. The Colombo crime family enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, extortion and gambling that are chargeable under New York State Penal Law and punishable by imprisonment for more than one year, acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (the making, financing, and collecting of extortionate extensions of

credit), acts indictable under Title 18, United States Code, Section 1951 (extortion) and acts indictable under Title 18, United States Code, Section 1955 (gambling).

15. On or about October 23, 1993, within the Eastern District of New York and elsewhere, the defendant THEODORE N. PERSICO, JR., also known as "Skinny" and "Teddy," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Colombo crime family, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder Joseph Scopo, in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. # 2010R00195
FORM DBD-34

CR. No.     10 CR 147 (S-7)(SLT)

# UNITED STATES DISTRICT COURT

## EASTERN District of NEW YORK

## CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

**THEODORE N. PERSICO, JR.,**

Defendant.

## SUPERSEDING INFORMATION

Cr. No.   10 CR 147 (S-7)(SLT)

(T. 18, U.S.C., §§ 1959(a)(5))

---

*A true bill.*

_____
                                                                *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* _____

_____
                                                                *Clerk*

*Bail, $* _____

---

NICOLE ARGENTIERI, AUSA (718) 254-6232
ALLON LIFSHITZ, AUSA (718) 254-6164
RACHEL NASH, AUSA (718) 254-6072